UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE LIS HOFFMAN,

                         Plaintiff,            Civil Action No. 19-10843
                                        Honorable Victoria A. Roberts
v.                                       Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                         Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u><br><u>ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 10]</u>

Plaintiff Leslie Lis Hoffman ("Hoffman") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #9, #10), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Hoffman was not disabled under the Act during the relevant time period. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #10**) be **GRANTED**, Hoffman's

Motion for Summary Judgment (**Doc. #9**) be **DENIED**, and that pursuant to sentence four

of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Hoffman was 45 years old at the time of her alleged onset date of January 6, 2015,

and at 5'3" tall weighed approximately 200 pounds during the relevant time period.  (Tr.

33, 206).  She completed high school but had no further education.  (Tr. 34, 207).  She

worked as a cashier and then on an assembly line at a factory until approximately April

2012, when her medical conditions allegedly made it too difficult for her to perform her

job duties.  (Tr. 48, 206).  She now alleges disability primarily as a result of fibromyalgia,

back and hip pain, headaches, depression, and anxiety.  (Tr. 34, 37-38, 206, 216).

After Hoffman's application for DIB was denied at the initial level on September

20, 2016[1] (Tr. 104-08), she timely requested an administrative hearing, which was held on

December 7, 2017, before ALJ Earl Ashford (Tr. 29-55).  Hoffman, who was represented

by attorney Robert Gaecke, Jr., testified at the hearing, as did vocational expert Mark Pinti.

(*Id.*).  On April 24, 2018, the ALJ issued a written decision finding that Hoffman was not

disabled under the Act prior to her date last insured of December 31, 2017.  (Tr. 12-24).

On February 1, 2019, the Appeals Council denied review.  (Tr. 1-5).  Hoffman timely filed

for judicial review of the final decision on March 22, 2019.  (Doc. #1).

---

[1] Hoffman had filed a previous application for DIB.  On January 5, 2015, ALJ Ryan Johannes issued a written decision finding that Hoffman was not disabled under the Act.  (Tr. 59-72).  On March 16, 2016, the Appeals Council denied review, and Hoffman did not pursue that claim any further.  (Tr. 79-83).

The Court has thoroughly reviewed the transcript in this matter, including Hoffman's medical record, function and disability reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

3

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Hoffman was not disabled under the Act during the relevant period of time.  At Step One, the ALJ found that Hoffman did not engage in substantial gainful activity between January 6, 2015 (her alleged onset date) and December 31, 2017 (her date last insured).  (Tr. 14).  At Step Two, the ALJ found that she had the severe impairments of vestibular headaches/migraine headaches with occipital neuralgia and torticollis, congenital hip dysplasia with osteoarthritis, trochanteric bursitis, degenerative disc disease/scoliosis, cervical spondylosis, positional dizziness, fibromyalgia, chronic pain, hypertension, obesity, general anxiety disorder, panic disorder, cognitive impairment, and affective disorder.  (Tr. 15).  At Step Three, the ALJ found that Hoffman's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then assessed Hoffman's residual functional capacity ("RFC"), concluding that she was capable of performing sedentary work, with the following additional

limitations:  must be allowed to sit or stand alternating position no more frequently than every thirty minutes; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally use the bilateral lower extremities for operating foot controls; limited to frequent use of the bilateral upper extremities for reaching, handling, and fingering; must avoid all exposure to hazards such as dangerous moving machinery and unprotected heights, extreme cold, and extreme heat; limited to simple, routine, repetitive tasks in a work environment free from fast-paced production requirements, such as moving assembly lines and conveyor belts; and limited to making only work-related decisions with few, if any, workplace changes.  (Tr. 17).

At Step Four, the ALJ found that Hoffman was not capable of performing any of her past relevant work through her date last insured.  (Tr. 21).  At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that, through that time, Hoffman was capable of performing the jobs of inspector (20,000 jobs nationally), document preparer (30,000 jobs), and sorter (5,000 jobs). (Tr. 23).  As a result, the ALJ concluded that Hoffman was not disabled under the Act prior to December 31, 2017.  (Tr. 24).

###        C.        Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has

made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

6

### D.    Analysis

In her motion for summary judgment, Hoffman argues that the ALJ erred in (1) evaluating the opinion of her treating physician, David Vallance, M.D., and (2) failing to properly account for her headaches in the RFC assessment.  (Doc. #9 at 8-14).  For the reasons set forth below, the Court disagrees and finds that substantial evidence supports the ALJ's decision.

#### 1.    *The ALJ Properly Evaluated Dr. Vallance's Opinion*

Hoffman first argues that the ALJ erred in discounting the October 2017 opinion of her treating rheumatologist, Dr. Vallance.  (*Id.* at 9-12).  The well-established treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)[2]). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'"  *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In the opinion at issue, dated October 26, 2017, Dr. Vallance indicated that

---

[2] Although this regulation has been superseded by 20 C.F.R. § 404.1520c, the new regulation applies only to claims filed on or after March 27, 2017.

Hoffman's fibromyalgia, hip dysplasia, and anxiety were profoundly disabling.  (Tr. 409-12).  Specifically, he indicated that Hoffman could walk less than one block; sit for less than two hours total and stand for less than two hours total in an eight-hour workday; and rarely lift less than ten pounds.  (Tr. 410-11).  Dr. Vallance further opined that Hoffman required a sit/stand option and unscheduled breaks every 30-60 minutes.  (Tr. 410).  He indicated that Hoffman could use her hands, fingers, and arms just 5% of the workday; could never reach overhead; would be off-task 25% or more of the time; would miss more than four days of work per month; and was incapable of even low-stress work due to her "current symptom burden."  (Tr. 411-12).  When asked to identify the clinical findings and objective signs supporting his opinion, Dr. Vallance stated: "soft-tissue tenderness, spasm[,] x-ray evidence of hip dysplasia[.]"  (Tr. 409).  He also checked boxes indicating that Hoffman needed breaks due to "muscle weakness" and "pain/parethesias, numbness," as well as chronic fatigue and medication side effects.  (Tr. 410).

The ALJ considered Dr. Vallance's opinion but gave it little weight, noting first that it contained "no citation to any objective criteria in support of what appears to be subjectively reported limitations that are extreme in comparison to his medical record kept in the ordinary course of treatment."  (Tr. 20).  The ALJ's observation in this respect finds support in the record.  At Hoffman's first visit to Dr. Vallance, on October 7, 2015, she complained of widespread pain and fatigue.  (Tr. 296-99).  On examination, she had paraspinal tenderness and a certain number of unspecified soft-tissue tender points, but she was in no acute distress, and her muscle tone, strength, range of motion, stability, gait, and mental status were all normal.  (Tr. 297-98).  Dr. Valance noted that, other than her "ESR

8

[erythrocyte sedimentation rate] of 28," there was "no other current evidence available here for inflammation." (Tr. 298). He concluded that Hoffman met the criteria for fibromyalgia syndrome because she had "widespread pain, tenderness, fatigue, non-restorative sleep, post-exertional malaise, disequilibrium, headaches, coccygeal pain, and [irritable bowel syndrome]." (*Id.*). Hoffman saw Dr. Vallance approximately ten more times between October 2015 and October 2017; at each visit, Dr. Vallance noted Hoffman's subjective complaints of pain and fatigue (Tr. 281, 286, 291, 313, 414, 418, 423, 427, 431, 435) and recorded the exact same physical examination findings, i.e., no acute distress, normal muscle tone, strength, range of motion, stability, gait, and mental status (Tr. 283, 288, 293, 315, 416, 420, 425, 429, 433, 437). While Dr. Vallance adjusted Hoffman's medications periodically over this period of time, he also noted that laboratory tests were normal and/or unremarkable. (Tr. 304-06 (August 2015 labs unremarkable); Tr. 301, 313 (labs in April 2016 were "normal"); Tr. 438 ("no evidence an inflammatory or autoimmune disease" in September 2016), Tr. 417 (ESR normal in October 2017)). The ALJ cited many of these records throughout the decision, amply demonstrating his consideration of the medical evidence. (Tr. 19, 21).

It was also reasonable for the ALJ to infer that Dr. Vallance's October 2017 opinion was based primarily on Hoffman's subjective complaints where it was not supported by relevant objective findings.[3]  *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th

---

[3] Indeed, Hoffman testified at the administrative hearing that Dr. Vallance did not actually impose medical restrictions (on her ability to lift, etc.) based on objective testing; rather, he simply asked her questions about "how much I can bend," etc.  (Tr. 36).

Cir. 2009) ("[S]ubstantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data."); *Hayward v. Comm'r of Soc. Sec.*, No. 14-14163, 2015 WL 7749173, at *6 (E.D. Mich. Sept. 21, 2015) (observing, in a fibromyalgia case, that it "was not at all improper for the ALJ to consider [the plaintiff's] normal gait, muscle strength, and tone in assessing her subjective complaints and, ultimately, in formulating her RFC").   Thus, the ALJ properly discounted Dr. Vallance's opinion on this basis. *See, e.g., England v. Comm'r of Soc. Sec.*, No. 15-12818, 2016 WL 8114219, at *9-11 (E.D. Mich. July 11, 2016) (ALJ properly discounted Dr. Vallance's extreme limitations where they were neither supported by nor consistent with his own clinical findings and "low level of treatment").

The ALJ also discounted Dr. Vallance's opinion because it was "not fully consistent with the rest of the evidence of record." (Tr. 21).  This reasoning is also well supported by the record.  For example, as the ALJ noted, Dr. Kachadunan, a neurologist who saw Hoffman for her headaches and dizziness in October 2014, noted that her gait, strength, and muscle tone and bulk were normal.  (Tr. 21 (citing Tr. 391-93)).  Similarly, the ALJ noted that Dr. Snider, an orthopedist who treated Hoffman for back and hip pain, observed in July 2017 that an MRI of her lumbar spine revealed no "major spinal compressive issues"; characterized her spine as looking "quite good"; and simply recommended exercises to build up her core strength.  (Tr. 21 (citing Tr. 405-07)).  And, finally, the ALJ noted that Dr. Vallance's work-preclusive opinion was not consistent with the opinion of state agency physician William Jackson, M.D., who reviewed Hoffman's records and

opined that she had the physical capacity to perform light work.[4]  (Tr. 21 (citing Tr. 93-94)).

In sum, reading the ALJ's decision as a whole, the Court finds that he gave good reasons, supported by substantial evidence, for discounting Dr. Vallance's opinion.  *See Hannah v. Comm'r of Soc. Sec.*, No. 16-11589, 2017 WL 4946578, at *10 (E.D. Mich. Aug. 15, 2017) (ALJ properly discounted treating physician opinions where they "were not supported by the providers' own treatment notes and were otherwise inconsistent with other substantial evidence in the record").

### 2.    The ALJ Properly Evaluated Hoffman's Headaches

Hoffman recognizes that the ALJ "included 'vestibular headaches/migraine headaches with occipital neuralgia [and] torticollis' in her list of severe impairments[.]" (Doc. #9 at 13 (quoting Tr. 15) (emphasis omitted)).  However, she argues that the ALJ erred in failing to account for the frequency, duration, and intensity of these headaches in the RFC assessment.  (*Id.* at 12-14).  The Court disagrees.

The ALJ specifically referenced Hoffman's report that she had headaches "every day"; however, he also noted that her treatment for that condition consisted of "only over-the-counter medication such as Tylenol."  (Tr. 18 (citing Tr. 45)).  This was a relevant consideration.  *See, e.g., Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014) ("Most revealingly, Curler admitted that she addressed the headaches mostly with

---

[4] Hoffman argues that the ALJ improperly "suggested inconsistency with [Dr. Jackson's] review" that "only include[ed] diagnoses of hip dysplasia and vertigo[.]"  (Doc. #9 at 12).  This is simply incorrect, however, as Dr. Jackson expressly considered Hoffman's fibromyalgia diagnosis in determining that she could nevertheless perform light work.  (Tr. 85, 89, 90, 93-94).

routine, non-prescription medications."); *Bowman v. Comm'r of Soc. Sec.*, No. 12-14494, 2014 WL 36642, at *7 (E.D. Mich. Jan. 5, 2014) (ALJ properly discounted plaintiff's allegations of disabling headaches where he "took only over-the-counter medication to treat his pain"). Moreover, the ALJ accounted for the credible symptoms of Hoffman's headaches by restricting her to a very narrow range of sedentary jobs that involved only simple, routine, repetitive tasks, and no fast-paced production requirements. (Tr. 15-21).

In arguing that the ALJ failed to "grapple" with her headaches in formulating her RFC, Hoffman does not cite to any medical evidence suggesting that this impairment caused greater functional limitations than those determined by the ALJ– and, indeed, there is little such evidence to discuss. The only medical source who attributed specific functional limitations to Hoffman's headaches was the consultative psychological examiner, Gayle Oliver-Brannon, Ph.D., who opined in October 2014 that "complex tasks may be difficult for her due to migraine syndrome."[5] (Tr. 384). The ALJ specifically considered Dr. Oliver-Brannon's opinion in this respect (Tr. 16, 20), and his decision to limit Hoffman to simple, routine, repetitive tasks without fast-paced production requirements (Tr. 17) amply accounts for this limitation. Because Hoffman points to no other specific headache-related limitation that the ALJ improperly excluded from the RFC assessment, this argument fails. *See Turvey v. Comm'r of Soc. Sec.*, No. 12-12388, 2013 WL 3271194, at *5 (E.D. Mich. June 27, 2013) ("Plaintiff does not specify any additional

---

[5] Although Hoffman did complain of headaches to Dr. Vallance (Tr. 286, 291, 296), he did not mention headaches in his questionnaire (Tr. 409-12) or otherwise opine that they caused specific functional limitations.

work-related functional limitations the ALJ should have, but did not, include in the RFC assessment ….").

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #10**) be **GRANTED**, Hoffman's Motion for Summary Judgment (**Doc. #9**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.


Dated: September 25, 2019                          s/David R. Grand
Ann Arbor, Michigan                                DAVID R. GRAND
                                                   United States Magistrate Judge


## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also*

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 25, 2019.

<u>s/Eddrey O. Butts</u>
EDDREY O. BUTTS
Case Manager